UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS —EASTERN DIVISION

| | |
|---|---|
| IVO GEIJSEN, | ) |
|         Plaintiff, | ) |
| V. | ) |
| DANTE ODONI, RANIM BARGHOUTY | ) No. 20 –cv-02837 |
| and COLD WELL BANKER RESIDENTIAL | ) |
| REAL ESTATE LLC, a California limited | ) |
| liability company, | ) |
|         Defendants. | ) |

**DEFENDANTS DANTE ODONI and RANIM BARGHOUTY
RESPONSE TO UNDISPUTED FACTS AND
STATEMENT OF ADDITIONAL FACTS**

Defendants DANTE ODONI and RANIM BARGHOUTY through their attorney Jeffrey K. Gutman and submits the following response to the Plaintiff's Undisputed Facts and submits additional facts as follows:

**Response to Plaintiff's Undisputed Facts**

1. Seller owns condominium Unit # 68E in Trump Tower, 401 N. Wabash, Chicago, IL 60611. (Answer, ¶5; Geijsen Decl. ¶ 3)

   **Answer:** The Defendants admit this statement.

2. On July 9, 2019, Seller and Buyers entered into a Condominium Real Estate Sale and Purchase Contract (the "Contract") related to a sale of condominium Unit #68E. A true and accurate copy of the Contract is attached to the Complaint as Exhibit A. (Answer, ¶05) The Contract was modified by letters dated July 17 and 22, 2019 (the "Modification"). True and accurate copies of the Modification are attached to the Complaint as Exhibit B and the Answer as Exhibit A. (Answer, ¶6)

   **Answer:** The Defendants admit this statement.

3. Pursuant to the Contract, Buyers deposited with Escrowee $135,000 in initial

earnest money (the "Initial Earnest Money"). (Answer, ¶7)

**Answer:** The Defendants admit this statement.

4.    Pursuant to the Contract, Initial Earnest Money was to be increased by Buyers to 9% of the Purchase Price (the "Final Earnest Money") on or before March 20, 2020. The amount of the Final Earnest Money was $243,000, based on the $2.7 million Purchase Price under the Contract. (Answer, ¶ 8)

**Answer:** The Defendants admit that pursuant to the terms of the contract, the earnest money was to be increased to $243,000 (an additional $135,000) by March 31, 2020. (It is believed that the date of March 20, 2020 indicated by the plaintiff was a typographical error) See contract attached to the complaint as Exhibit A page 1 paragraph 4.

5.    On March 30, 2020, Buyers notified Seller that due to the COVID19 pandemic, Buyers were relieved from their obligation to perform under the Contract and were not obligated to pay the Final Earnest Money ("Buyers' Notice"). Buyers' Notice further stated they were entitled to a return of the Initial Earnest Money. A true and accurate copy of Buyers' Notice is attached to the Complaint as Exhibit C. (Answer ¶ 9)

**Answer:** The Defendants admit this statement.

6.    Pursuant to Paragraph 3 of the Modification, "in the event of Buyers' default prior to the deposit of the full 9% earnest money, Buyers' obligation to deposit the full 9% earnest money will remain intact." (Answer, ¶10)

**Answer:** The Defendants admit this statement exists in the contract, but states that the contract must be read as a whole. The relevant part of the paragraph reads

> *"...in the event of Buyers' default prior to the deposit of the full 9% earnest money, the Buyers obligation to deposit the full 9% earnest money will remain intact; otherwise, Seller shall retain all rights at law or in equity and in the event of litigation, the*

*non-prevailing party shall be responsible for payment in full of any and all costs for the prevailing party….*

(See Paragraph 3 of the Modification letter attached to the complaint as Exhibit B)

7. Pursuant to General Provision P of the Contract, "[t]ime is of the essence for purposes of this Contract." (Answer ¶ 10 )

**Answer:** The Defendants admit this statement exists in the contract, but states that the contract must be read as a whole (See Answer ¶ 11)

8. Pursuant to General Provision E. of the Contract, "In the event of a default by Buyer, the Earnest Money, less expenses and commissions of the listing broker, shall be paid to Seller." (Answer, ¶12)

**Answer:** The Defendants admit this statement exists in the contract, but states that the contract must be read as a whole. The relevant part of the paragraph is as follows:

*In the event of default by Buyer, the Earnest Money, less expenses and commission of the listing broker, shall be paid to the Seller… In the In the event of any default, Escrowee should give Witten notice to the seller and buyer indicating Escrowee's intended disposition of the Earnest Money. …If either Seller or Buyer objects to the intended disposition within the 30 day period, or if Escrowee is a licensed real estate broker and does not receive the joint direction of Seller and Buyer authorizing the distribution of the Earnest Money, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by filing an Action in the nature of Interpleader*

(See Contract attached to the complaint as Exhibit A.)

9. Pursuant to Paragraph 3 of the Modification, "in the event of litigation, the non-prevailing party shall be responsible for payment in full of any and all costs of the prevailing party including, but not limited to, reasonable attorney's fees and court costs." (Answer, ¶.14)

**Answer:** The Defendants admit this statement exists in the contract, but states that the contract must be read as a whole (See Answer ¶ 14)

10. Seller has done all that he was required to do under the Contract. (Geijsen

Dec1.4)

**Answer:** The Defendants deny this statement (See Answer ¶ 16). The Seller has not performed all terms of the contract. The contract General Provision paragraph C provides that *"At least 5 days prior to the closing date, Seller shall deliver to Buyer or his agent evidence of merchantable title* To this date, Seller has not provided the defendants with a title commitment or any evidence of merchantable title. (See Decl or Dante Odoni)

11. Seller was aware that Buyers intended to obtain a mortgage to purchase the subject property. (1st Aff Defense ¶ 9).

**Answer:** The Defendants admit this statement.

12. On March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic that is expected to spread. (1st Aff Defense ¶ 11).

**Answer:** The Defendants admit this statement.

13. The elderly and others with parts of the populations are at higher risk of experiencing more severe illness as a result of COVID-19, including older adults and people who have serious chronic medical conditions such as heart disease, diabetes, or lung disease. . (1st Aff Defense ¶ 12).

**Answer:** The Defendants admit this statement.

14. On March 9, 2020, the Governor of Illinois, declared all counties in the State of Illinois as a disaster area. (the First Gubernatorial Disaster Proclamation) in response to the outbreak of COVID-19; (1" Aff. Defense ¶ 13)

**Answer:** The Defendants admit this statement.

15. On March 20, 2020, the Governor of Illinois issued Executive Order 2020-10 that among other things ordered all individuals currently living within the State of Illinois to

stay at home or at their place of residence except as allowed by the Executive Order. (1st Aff. Defense ¶ 14)

**Answer:** The Defendants admit this statement.

16. The City of Chicago also entered stay at home orders. (1st Aff. Def, ¶15)

**Answer:** The Defendants admit this statement.

17. The orders entered by the State of Illinois, City of Chicago and Cook County effectively closed many businesses. (1" Aff Defense ¶ 16)

**Answer:** The Defendants admit this statement.

18. To this date, there are still orders in effect that limit people's ability to work, travel, and otherwise do business. (1' Aff Defense ¶ 17)

**Answer:** The Defendants admit this statement.

19. Buyers requested that the closing date be extended so performance could be made when the effects of the pandemic may subside. (1st Aff. Defense ¶ 18)

**Answer:** The Defendants admit this statement.

20. The Covid-19 pandemic was an unforeseeable event that was not contemplated by Seller or Buyers when entering into an agreement to purchase a condominium in a high rise building. (1st Aff Defense ¶ 19)

**Answer:** The Defendants admit this statement.

**Defendant's Additional Uncontested Facts**

1. In July 2019, in response to an advertisement offering to lease a unit in Trump Tower for $12,000 per month, the Defendant's went to see the unit owned by the plaintiff with the intention to rent the property (Decl od Dante Odoni ¶1)

2. Banker Real Estate was the listing broker employed by the Seller to sell the subject property. (Decl of Dante Odoni ¶ 2)

3. Caldwell Banker Real Estate through its agent Chezi Rafaeli acted as a duel agent for the seller and the buyer in the transaction. (Decl of Dante Odoni ¶3)

4. The Defendant informed the plaintiff through its real estate agent Chezi Rafaeli that the plaintiff intended to obtain a loan for the purchase of the subject property. (Decl or Dante Odoni ¶ 7)

5. The plaintiff's real estate agent Chezi Rafaeli provided the defendant with suggested lenders why the defendant should apply for a mortgage. (Decl of Dante Odoni ¶ 5)

6. The plaintiff's real estate agent Chezi Rafaeli hired and agreed to pay attorney Dean Lurie to act as attorney in connection with the contract. (Decl of Dante Odoni ¶6)

7. The plaintiff was aware that the defendant intended to obtain a mortgage to purchase the subject property. (Decl or Dante Odoni ¶7)

8. The parties agreed that the defendant may obtain a mortgage, and the contract General Provisions C provides in part "that a delay by the Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract". (Contract attached to the complaint as Exhibit A)

9. The contract including General Provision paragraph C which provides that "At least 5 days prior to the closing date, Seller shall deliver to Buyer or his agent evidence of merchantable title. (See contract attached to complaint as Exhibit A)

10. The Seller to this date has not provided the defendants with a title commitment or any evidence of merchantable title. (See Decl of Dante Odoni.¶15)

11. At the time of entering into the contract for purchase, the Defendants also entered into a lease and have paid all rent to the plaintiff for the use of the subject property. (See Decl of Dante Odoni.¶ 8)

12. The earnest money of $135,000 has been paid to date by the Buyers to the listing broker as Escrowee Caldwell Banker Real Estate (See Decl or Dante Odoni ¶ 9)

13. Dante Odoni is a certified public accountant doing business as a CPA in Cook County Illinois. (See Decl or Dante Odoni ¶ 10)

14. The Covid 19 pandemic was an unforeseeable event which caused the business of Dante Odoni to suffer great losses and made it impossible to obtain a mortgage. (See Decl or Dante Odoni ¶ 11)

15. On or about March 15, 2020, the Covid 19 pandemic caused the Trump Tower to cease providing many of the property amenities including maintenance services, use of the pool, spa, room service, package hold and delivery, grocery door services, restaurant and room service restricted the visits by guests in the building. (See Decl or Dante Odoni ¶ 12).

16. The contract General Provision paragraph O provides in part that "Seller agrees to provide possession of the Property in the same condition as it is on the acceptance date. (See contract attached to complaint as Exhibit A)

17. The acceptance date of the contract was July 9, 2019. (See contract attached to complaint as Exhibit A)

18. From on or about March 15, 2020 through the present, the Trump building and the the subject unit being purchased are not in the same condition as at the tie of entering into the contract on July 9, 2019. (See Decl or Dante Odoni ¶ 13).

19. It is unknown when the effects of the Covid 19 pandemic will subside and it is unknown when the building maintenance and other amenities will be able to be used as originally contemplated at the time that the parties entered into the contract. (See Decl or Dante Odoni ¶ 14).

          **Respectfully submitted,**

          DANTE ODONI and
          RANIM   BARGHOUTY


          <u>By: /s/ Jeffrey L. Gutman</u>
          Attorney for Defendants

Jeffrey K. Gutman- ARDC No.   6190303
Gutman & Associates LLC
4018 N. Lincoln Avenue
Chicago, Illinois 60618
773/472-4500
<u>jgutman@GutmanAttorneys.com</u>