UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IVO GEIJSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 20 C 2837 |
| | ) |
| DANTE ODONI, RANIM BARGHOUTY, | ) Judge Charles P. Kocoras |
| and COLDWELL BANKER | ) |
| RESIDENTIAL REAL ESTATE, LLC, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is Plaintiff Ivo Geijsen's ("Geijsen") motion for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court will grant the motion.

**STATEMENT**

The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiff Geijsen is a citizen of the Netherlands and owns a condominium in the Trump Tower, 401 N. Wabash, Chicago, Illinois (the "Condominium"). Defendants Dante Odoni and Ranim Barghouty (collectively, "Buyers") are citizens of the State of Illinois and contracted to purchase the Condominium from Geijsen. Defendant Coldwell Banker Residential Real Estate LLC ("Coldwell Banker") is a California limited liability company and escrowee to the transaction between Geijsen and Buyers.

On July 9, 2019, Geijsen and Buyers entered into a Condominium Real Estate Sale and Purchase Contract (the "Contract") for the purchase of the Condominium. On July 23, 2019, the parties modified the Contract (the "Modification") to clarify certain provisions of the Contract. The parties do not dispute the validity of either contract. As part of the Contract, Buyers deposited $135,000 of earnest money (the "Initial Earnest Money") with Coldwell Banker. Coldwell Banker still retains the Initial Earnest Money. Buyers were also required to pay an additional $108,000 in earnest money by March 31, 2020 (the "Final Earnest Money"), bringing the total earnest money to $243,000, or 9% of the final purchase price of the Condominium. The Final Earnest Money has not been deposited.

On March 15, 2020, Trump Tower suspended many of the property amenities, such as the pool, spa, and room service, due to the COVID-19 pandemic. On March 30, 2020, Buyers notified Geijsen that due to the pandemic, Buyers believed that they were relieved from their obligation to perform under the Contract and were no longer obligated to pay the Final Earnest Money. Buyers further stated that they were entitled to a return of the Initial Earnest Money.

Based on these facts, Geijsen filed his complaint on May 11, 2020, alleging breach of contract against Buyers and seeking declaratory judgement that he is entitled to be paid the Final Earnest Money from Buyers and the Initial Ernest Money from

Coldwell Banker. On July 14, 2020, Geijsen moved for summary judgement under Rule 56.

In ruling on a motion for summary judgment, the Court considers "the record as a whole." *Morgan v. Harris Trust & Sav. Bank of Chi.*, 867 F.2d 1023, 1026 (7th Cir. 1989). In its consideration, the Court construes all facts and draws all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242. 255 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson*, 477 U.S. at 248.

### I. Breach of Contract Claim

Geijsen argues that he is entitled to summary judgment because the undisputed facts show that Buyers breached the Contract by not paying the Final Earnest Money and the plain language of the contract shows he is entitled to liquidated damages in the amount of $243,000. "Under Illinois law, the elements of a breach of contract cause of action are a valid and enforceable contract, breach by the defendant, resulting in damages to the plaintiff." *Nelson v. Bd. Of Educ., Country Club Hills Sch. Dist. 160*, 292 F.Supp.3d 792, 799 (N.D. Ill. 2017). The validity of the Contract is not in dispute. Additionally, non-payment of the Final Earnest Money constitutes a material breach of

3

the Contract unless the breaching party has a valid excuse. *See REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 698 (7th Cir. 2008). Buyers provide two affirmative defenses that they argue relieve them of their obligations under the Contract: frustration of purpose and the doctrine of impossibility. We address each in turn.

### A. Frustration of Purpose

Buyers first argue that their performance under the contract is excused by frustration of purpose. We disagree.

The doctrine of commercial frustration will be applied when (1) the frustrating event was not reasonably foreseeable and (2) the value of counter-performance has been totally or nearly totally destroyed by the frustrating cause. *Smith v. Roberts*, 54 Ill. App. 3d 910, 913 (4th Dist. 1977). "[F]rustration is no defense if it was foreseeable or controllable by the promisor, or if counter-performance remains valuable." *Greenlee Foundries, Inc v. Kussel*, 12 Ill. App. 3d 611, 619 (1st Dist. 1973).

Buyers contend that the COVID-19 pandemic and its accompanying financial impact on their business made it impossible to obtain a mortgage, thus frustrating the purchase of the condominium. We agree with Defendant that the COVID-19 pandemic was the frustrating event, that it was not reasonably foreseeable, and that the first element is met.

However, we disagree that the value of counter-performance, Geijsen providing Buyers with title to the Condominium, has been totally or nearly totally destroyed by

4

the frustrating cause. Buyers simply posit that the Trump Tower building and amenities are not the same as they were at the time of entering into the Contract, which the Court takes to be the allegation of destruction of counter-performance.

Illinois court have interpreted "totally or near totally destroyed" much differently than Buyers posit. For example, in *Smith v. Roberts*, the defendant operated a men's clothing store. 54 Ill.App.3d at 912. The defendant entered into a lease agreement with the plaintiff for the rental of the first floor and basement of a property located adjacent to the defendant's main store. *Id*. The defendant planned to use the rented space to establish a new department of the store. *Id*. Unfortunately, the defendant's main store was completely destroyed by a fire. *Id*. The Illinois Appellate Court held that counter-performance of the lease with the plaintiff for the adjacent space was totally or near totally destroyed because the main store was gone. *Id.* The Court reasoned that the value of the rented space was destroyed because it was never meant to operate without the main store and the defendant's operations would have to change drastically to make the new space self-sufficient. *Id*. at 913.

Here, the temporary closure of the amenities of Trump Tower falls far short of the total destruction of counter-performance shown in *Smith.* While the amenities contribute to the appeal of living in a luxury high-rise, the main counter-performance by Geijsen is providing the Condominium. The Buyers have made no allegation that the actual dwelling unit has any material issue, has been destroyed, or rendered unusable

5

by the COVID-19 pandemic. The Condominium still retains its value and has not been totally or near totally destroyed by the pandemic. Therefore, the second element of the frustration of purpose is not satisfied. Accordingly, Buyers have not asserted frustration of purpose as a valid excuse for their breach of the Contract.

### B. Doctrine of Impossibility

Defendants next argue that the doctrine of impossibility excuses their performance under the Contract because the COVID-19 pandemic impacted Buyers' business such that it became impossible to obtain a mortgage and complete performance of the Contract. We disagree.

The potential inability to obtain financing is generally considered a foreseeable risk that can be readily guarded against by the inclusion in the contract of financing contingency provisions. *YPI 180 N. LaSalle Owner, LLC v. 180 N. Lasalle II, LLC*, 403 Ill. App. 3d 1, 7 (1st Dist. 2010) (citing *Ner Tamid Congregation of North Town v. Krivuchko*, 638 F. Supp. 2d 913, 928 (N.D. Ill. 2009)). A "mortgage contingency" clause, which is typically present in a Condominium Real Estate Sale and Purchase Contract, can guard against the inability to obtain a mortgage. However, a mortgage contingency clause was not included in the Contract. In fact, the clause was removed from the Contract prior to execution. The inability to obtain financing alone is insufficient to excuse performance under the doctrine of impossibility. *YPI 180 N.*

6

*Lasalle Owner, LLC*, 403 Ill.App.3d at 7. Therefore, the doctrine of impossibility is not a valid excuse for Defendants.

Defendants also seem to imply that the suspension of amenities in Trump Tower implicates the doctrine of impossibility. However, the doctrine excuses performance only where performance is rendered objectively impossible due to destruction of the subject matter of the contract or by operation of law. *YPI 180 N. Lasalle Owner, LLC*, 403 Ill.App.3d at 6 (citing *Leonard v. Autocar Sales & Service Co.*, 392 Ill. 182, 187 (Ill. 1945)). Even if the amenities were destroyed, there is no allegation that the Condominium itself was destroyed. As such, Defendants have not asserted a valid excuse for their breach of the Contract.

Accordingly, Geijsen is entitled to summary judgment.

## II. Liquidated Damages

Geijsen argues that he is entitled to the total amount of earnest money, $243,000, as liquidated damages. We agree.

"In the absence of an express provision to the contrary, a provision for the forfeiture of earnest money will be construed as a liquidated damages clause." *Berggren v. Hill*, 401 Ill. App. 3d 475, 479 (2010). Under Illinois law, a liquidated damages provision in a real estate contract will be enforced if it can be shown: "(1) that the parties intended to establish an agreed upon amount of damages in the event of a breach; (2) that the amount provided as liquidated damages was reasonable at the time

7

of contracting and bears some relation to the actual damages which might be sustained; and (3) that the actual damages would be difficult to prove and uncertain in amount." *Id.* at 480. "The fact that the amount of liquidated damages stated in the provision does not equal a party's subsequent damages is not determinative of whether the provision is valid and enforceable." *Id.*

The parties' agreed Modification shows that the earnest money was intended to be liquidated damages. The Modification states:

> [I]n the event of Buyers' default prior to the deposit of the full 9% earnest money, the Buyers' obligation to deposit the full 9% earnest money will remain intact; otherwise, seller shall retain all rights at law or in equity and, in the event of litigation, the non-prevailing party shall be responsible for payment in full of any and all costs for the prevailing party including, but not limited to, reasonable attorney's fees and court costs.[1]

The plain language is clear that the earnest money was meant to be a liquidated damages provision, as the parties intended the full 9% to be paid even if Buyers defaulted. This amount was reasonable at the time the parties entered into the Contract. *See Seigel v. Levy Org. Development Co., Inc.*, 182 Ill. App. 3d 859, 862 (1st Dist. 1989) (finding 20% of purchase price reasonable). Additionally, at the time of contracting, the specific amount of damages was uncertain, and it was reasonable for the parties to bargain for liquidated damages to avoid the difficulty of ascertaining damages after a breach.

---

[1] 20-cv-2837, Dkt. # 1-2, ¶ 3.

*Berggren*, 401 Ill. App. 3d at 481–82. Accordingly, Geijsen is entitled to the full $243,000 as liquidated damages.

## CONCLUSION

For the reasons mentioned above, the Court grants Geijsen's motion for summary judgment. Geijsen is awarded $243,000 in liquidated damages. Coldwell Banker is ordered to give the $135,000 Initial Earnest Money to Geijsen. Buyers must pay the remaining $108,000. Judgment entered. Civil case terminated. It is so ordered.

Dated: 12/16/2020

_____
Charles P. Kocoras
United States District Judge

9